IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| WANDA MARTINEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| META PLATFORMS, Inc., | ) |
| f/k/a Facebook, Inc., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, Plaintiff Wanda Martinez, and for her Complaint, states the following.

### PARTIES

1. Plaintiff Wanda Martinez ("Martinez") is a female resident of the State of New Mexico.

2. Defendant Meta Platforms, Inc. (f/k/a Facebook, now known as "Meta" and/or "Facebook/Meta") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in a state other than New Mexico.

3. Defendant Meta does business within the State of New Mexico.

### JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §1332(a) and/or §1332(d). Jurisdiction is proper because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, this is an action between citizens of different states.

5. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and/or because the property that is the subject of this action is situated in this District.

1

## GENERAL ALLEGATIONS

6. In or about November 8, 2020, Plaintiff Martinez's daughter, Crystal Cervantes, was murdered by her boyfriend, Alejandro Alirez, a/k/a "Tuffy,", while he livestreamed on Meta Platforms, Inc's social media website Facebook. See attached Exhibit 1, and Exhibit 2, available at https://casetext.com/case/salcido-v-city-of-las-vegas-2 (last visited November 4, 2024), which is incorporated by reference as if set forth fully herein.

7. The video of the live stream, in which Ms. Cervantes was murdered, remained on Facebook for nearly an hour, ending at the 50:52 mark. Ibid.

8. Defendant Meta, through its agent, made a promise to Plaintiff Martinez (and the world) to remove the video of her daughter's death, and reasonably should have expected Plaintiff Martinez to act on the promise, and to forebear further action. Defendant Meta intended Plaintiff Martinez to rely on this promise.

9. Plaintiff Martinez expected and relied on Defendant Meta to provide assistance to Plaintiff Martinez by removing the video of her daughter's death, and therefore Plaintiff Martinez forbore further efforts to remove the video of her daughter's death. Plaintiff Martinez reasonably relied, to her detriment, on the promise made to her by Defendant Meta.

10. These facts, and similar events across the world, follow Meta and Mr. Zuckerberg's rash decision to livestream, while not being properly prepared. See https://www.wsj.com/articles/in-rush-to-live-video-facebook-moved-fast-and-broke-things-1488821247 (last visited November 4, 2024). See attached Exhibit 3.

11. Defendant Meta voluntarily promised to remove any violent video exhibiting any human killing such as the aforementioned video from its website.

12. In fact, on or about 2017, Defendant Facebook/Meta Founder Mark Zuckerberg, speaking at Facebook's annual development conference, expressed his condolences on behalf of employees to family members and friends of the victim, Robert Godwin from a killing in Cleveland, Ohio also in 2017.  See attached Exhibits 4, 5, 6, and 7 also available at:

   a. https://www.koha.net/en/tech/12923/Zuckerberg-promises-to-block-murder-videos-on-Facebook/ (last visited November 4, 2024),

   b. https://www.washingtonpost.com/lifestyle/style/mark-zuckerberg-has-vowed-to-limit-live-streamed-depravity-so-far-its-an-empty-promise/2017/04/18/d44de158-243c-11e7-b503-9d616bd5a305_story.html (last visited November 4, 2024),

   c. https://www.abc10.com/article/tech/zuckerberg-pledges-that-facebook-will-remove-any-post-that-promotes-or-celebrates-hate-crimes/103-465742657 (last visited November 4, 2024),

   d. https://www.washingtonpost.com/news/the-switch/wp/2017/05/03/facebook-is-adding-3000-workers-to-look-for-violence-on-facebook-live/ (last visited November 4, 2024).

13. Mark Zuckerberg co-founded the social media service Facebook and its parent company Defendant Meta Platforms (f/k/a Facebook, Inc.), of which he is chairman, chief executive officer and controlling shareholder.

14. Mr. Zuckerberg has promised for nearly a decade to end violence, murders, and killings on Meta Platforms (f/k/a Facebook, Inc.); and he has not, nor has Defendant.

15. 47 U.S.C. § 230 was never meant to be a shield and end run around federal communications commission regulations.  Rather, it was to promote the development of the internet and Defendant must still answer the common law and its contractual promise

3

beyond Section 230 to take down videos displaying violence, killings, and/or, inter alia, death.

16. There are many things Defendant could do to make good on Mr. Zuckerberg's promise. See attached Exhibit 8, available at https://www.adl.org/resources/article/livestreaming-violence-what-platforms-should-do (last visited November 4, 2024). For instance:

> **The Center for Technology & Society has repeatedly advanced a set of product policy recommendations to prevent extremists from abusing livestreaming to further causes that are clearly in violation of platforms' dangerous individuals/organizations policies.**
>
> The recommendations below could help stem the abuses of livestreaming, eliminate the profit motive for extremist activity, and better moderate hateful content.
>
> - **Only users who reach certain benchmarks can have a more frictionless ability to livestream.** Users should earn the privilege of livestreaming without friction, especially on mobile. On most platforms this entails verification, or at least the provision of personal information to livestreaming platforms, as well as reaching some follower threshold. While it is possible for hatemongers to reach these benchmarks as well, it is still critical that platforms leverage these benchmarks to exercise greater oversight when violative content is live-streamed. With these rules, individuals can be held accountable rather than cloaking themselves in anonymity.
>
> - **Awarding gradual access.** First-time streamers, or relatively new streamers, have limits placed on the number of viewers who can watch their videos. Their numbers can be increased if they have a record of obeying a platform's community guidelines.
>
> - **Prevent livestream links to and from problematic websites.** A user who accesses a livestreaming link from a website known for being lenient on white supremacists and other extremists should be directed away from the livestream link as soon as the livestreaming platform recognizes such traffic.
>
> - **Require more product engagement to continue livestreaming.** Users who are livestreaming should be prompted with a pop-up that requires activation every 10 minutes in order to

> continue streaming—a difficult ask for someone engaging in violent behavior.
>
> - **Delay for viewers.** If the user is not verified there should be a significant delay in the broadcast. This can provide moderators and AI tools enough time to act should the content violates terms of service or stream unlawful behavior.
>
> - **More investment in tools that better capture violative livestreaming content.** It should not take a massacre to weed out bad actors on a platform. Content moderation must be a continuous effort, not something done in quick response to a national tragedy.

Ibid (bold and emphasis added).  At a minimum, Defendant should require any person, especially those engaged in crimes, to be prompted every few minutes with a pop up that requires activation.  Or any of the above suggestions would be better than what Defendant did and/or still does not do.  Further, Defendant should be required to turn over the usernames and identities to those watching so that the proper authorities could be charged with any potential accessory to murder, or any crime committed.

17. Defendant should not allow a killer to thrill watching the number of viewers climb while a live stream continues uninterrupted.  Mr. Zuckerberg and Defendant have promised more than nothing, and certainly more than what happened to Plaintiff's daughter, Crystal Cervantes.

18. Mr. Zuckerberg's net worth is worth approximately $180 to 189 billion.  See attached Exhibits 9 and 10, also available at https://www.bloomberg.com/billionaires/profiles/mark-e-zuckerberg/?embedded-checkout=true (last visited November 4, 2024), and https://www.forbes.com/profile/mark-zuckerberg/ (last visited November 4, 2024).  He could afford to hire more employees to screen for violence and remove obscene posts. He and Meta choose profit over the safety of human beings.

5

19. "Our company will do everything to prevent these posts on Facebook, we will make it impossible," said Zuckerberg.  See attached Exhibit 4.

20. The article goes on to say, "Facebook will consider monitoring violent images and also offensive material shared on Facebook."  See attached Exhibit 4.

21. The removal of the video and barring of future postings would have protected Plaintiff Martinez from the subsequent injuries she suffered.

22. Plaintiff previous sued the City of Las Vegas, the Las Vegas Police Department, and other persons and entities regarding the death of her daughter, however Plaintiff's case was dismissed with prejudice. See attached Exhibit 2.

23. Defendant Meta knew or reasonably should have known that the removal and blocking of the video, and any future videos, were necessary for the protection of Plaintiff Martinez.

24. Defendant Meta in breach of the promise described above, failed to remove the unauthorized video and prohibit any future videos from being posted again until after the filing of this action.

## CLAIM FOR RELIEF

### (Breach of Contract: Promissory Estoppel)

25. Plaintiff Martinez incorporates the foregoing paragraphs as if set forth fully herein.

26. Defendant Meta manifested and intent to by legally obligated to remove the present and prevent future unauthorized videos from being posted.

27. Plaintiff Martinez had an objectively reasonable expectation that Defendant Meta would fulfill its obligation to remove the material from publication and prevent its reposting. Plaintiff Martinez was reasonable and relying on Defendant Metas promise.

6

28. Defendant Meta's wanton or reckless breach of its promise to Plaintiff Martinez caused bodily harm and the wanton or reckless breach of the promise to render the performance was of such a character that Defendant Meta had reason to know when it made its promise that the breach would cause mental suffering for reasons other than mere pecuniary loss.

29. Additionally, Defendant Meta's breach of its promise to Plaintiff Martinez is of such a kind that serious emotional disturbance was a particularly likely result.

30. As a result of Defendant Meta's breach of its promise to Plaintiff Martinez, Plaintiff Martinez has suffered bodily harm, substantial emotional distress, mental anguish, injury to her personal and professional reputation, loss of self-esteem and dignity. As compensation, Plaintiff Martinez should be awarded damages against Defendant Meta in an amount to be determined at trial, but in no event less than economic damages in excess of $40,000 and non-economic damages in excess of $3,000,000.

31. As a direct and proximate result of Defendant Meta's actions, Plaintiff Martinez has incurred expenses in bringing this action and should be awarded such costs to the full extent permitted under the law.

WHEREFORE, the Court should grant judgment in favor of Plaintiff Martinez and against Defendant Meta and grant the following relief:

1. On Plaintiff's Claim for Relief, damages in an amount to be determined at trial, but in no event less than $3,040,000 plus costs and disbursements;

2. For punitive damages; and

3. Such further or alternative relief in favor of Plaintiff as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand their Constitutional Right to Jury Trial under Federal Rule of Civil Procedure 38(b).

Dated: November 5, 2024

**Respectfully submitted,**

**CROSS LAW FIRM, LLC**

<u>By: /s/ Gerald Lee Cross, Jr.</u>  (NMD #24-174)
8001 Conser St., Ste. 280
Overland Park, Kansas 66204
Office Tel: (913) 236-5297
Fax: (913) 904-1650
lcross@cross-lawfirm.com
***ATTORNEY FOR PLAINTIFF***