# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

Wanda Martinez,

     *Plaintiff*,

v.

Meta Platforms, Inc., f/k/a Facebook, Inc.,

     *Defendant*.

NO. 1:24-cv-01129-LF-KK

# DEFENDANT META PLATFORMS, INC.'S
# <u>MOTION TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT</u>

Defendant Meta Platforms, Inc., f/k/a Facebook, Inc.[1] ("Meta") respectfully moves to dismiss Plaintiff Wanda Martinez's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## INTRODUCTION

On November 8, 2020, Alejandro Alirez committed a heinous crime when he shot and killed Plaintiff's daughter, Crystal Cervantes, in a residence in Las Vegas, New Mexico. According to Plaintiff's Complaint, Alirez livestreamed his actions on Facebook for approximately 50 minutes before the video (the "Livestream") was stopped and removed midstream. In 2021, Plaintiff unsuccessfully attempted to sue the Las Vegas police department for failing to adequately respond despite their use of the Livestream to monitor Mr. Alirez's movements inside the residence; that complaint was dismissed with prejudice. Plaintiff now brings suit against Meta for a single claim of "Breach of Contract: Promissory Estoppel," on the basis that Meta purportedly failed to stop and/or remove the Livestream on Facebook quickly enough. Though the underlying events are tragic, the Complaint against Meta fails for multiple reasons.

*First*, at the outset, Meta is not subject to general or specific jurisdiction in New Mexico. Meta is not a citizen of New Mexico, and Plaintiff does not allege any connection between Meta's alleged conduct and this forum state.

*Second*, Plaintiff fails to adequately plead facts that would establish multiple elements of a

---

[1] Facebook, Inc. changed its name to Meta Platforms, Inc. in October 2021. *See, e.g.*, Form 8-K filed by Meta Platforms (Oct. 28, 2021), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001326801/000132680121000071/fb-20211028.htm (last visited December 30, 2024).

claim for promissory estoppel.[2] Plaintiff fails to allege the existence of an enforceable promise, any reasonable reliance, or any action she allegedly took that substantially altered her position. Nor does Plaintiff allege that her forbearance was reasonably foreseeable by Meta.

*Third*, Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230") independently bars Plaintiff's claim because Plaintiff seeks to hold Meta liable as the publisher of the Livestream posted by Alirez on Facebook.

Accordingly, the Complaint should be dismissed. If the Court reaches the issue of Plaintiff's failure to state a claim, the dismissal should be with prejudice because Plaintiff's claims cannot be amended to cure the fundamental deficiencies described in this memorandum.

## BACKGROUND

Meta operates Facebook, an online service that enables users to create accounts to connect, share, discover, and communicate with friends, family, and communities on mobile devices and personal computers.

Crystal Cervantes – Plaintiff's daughter – was shot and killed by her boyfriend Alejandro Alirez in November 2020. Compl. ¶ 6. Alirez was livestreaming his actions at the time of the crime. *Id.* The Las Vegas Police Department had access to the Livestream while responding to the scene, but ultimately was unable to save Ms. Cervantes in time. Compl. Ex. 1 ¶ 39. Alirez ultimately was apprehended and charged; he pled guilty to multiple counts of murder and assault

---

[2] Though Plaintiff styles her claim as "Breach of Contract: Promissory Estoppel," the elements pleaded relate to a claim for promissory estoppel. For example, she does not plead the existence of a contract between herself and Meta or any consideration or performance. *See generally* Compl. Instead, she appears to allege that Meta's Chief Executive Officer made public statements that she allegedly detrimentally relied upon. Compl. ¶¶ 8-9, 11-14, 19-20, 26-31. As such, Meta understands that Plaintiff is only attempting to bring a promissory estoppel claim.

and was sentenced to prison for 42 years.

In November 2021, Plaintiff sued the City of Las Vegas, New Mexico, the Las Vegas Police Department, and others in connection with their response to Alirez's crimes. Compl. ¶ 22; Compl. Ex. 1. That lawsuit was ultimately dismissed with prejudice. Compl. ¶ 22.

As against Meta, Plaintiff alleges that the Livestream "remained on Facebook for nearly an hour" on November 8, 2020. Compl. ¶¶ 6-7. There is no allegation in the Complaint that the video was available on Facebook other than the Livestream.

Plaintiff further alleges that, in prior public statements in 2017, Meta's CEO allegedly promised to "Plaintiff Martinez (and the world) to remove the video of her daughter's death" and "voluntarily promised to remove any violent video exhibiting any human killing." Compl. ¶¶ 8, 11; *see also id.* ¶ 14 ("Mr. Zuckerberg has promised for nearly a decade to end violence, murders, and killings on Meta Platforms . . . ."). None of the exhibits that Plaintiff attaches in support of that allegation, however, establish that Meta ever made that promise to Plaintiff. Exhibits 4 and 5, for example, report on statements allegedly made by Meta's CEO to the audience at Facebook's annual developer conference – a conference Plaintiff does not allege she attended – where he "expressed his condolences on behalf of employees to family members and friends" of Robert Godwin following his tragic murder. Compl. Ex. 4 at 4. Exhibit 6 reports on a Facebook post made by Meta's CEO where, according to the article, he stated that Meta "won't always be perfect, but you have my commitment that we'll keep working to make Facebook a place where everyone can feel safe." Compl. Ex. 6 at 3. And Exhibit 7 reports on an announcement that Meta was adding 3,000 additional workers to the team that fields reports from users who flag inappropriate material on the site. According to the article, Meta's CEO stated that the new reviewers will "help us get

better at removing things we don't allow on Facebook" but again cautioned that "[n]o matter how many people we have on the team, we'll never be able to look at everything." Compl. Ex. 7 at 3. Plaintiff does not allege she has a Facebook account or that she was aware of the purported statements before the tragic death of her daughter. For example, she does not allege that, prior to November 2020, she read any of the articles in the exhibits that form the basis for her claim. *See generally* Compl.

Several allegations Plaintiff makes are conclusory in nature. For example, she alleges, without more, that Meta "knew or reasonably should have known that the removal and blocking of the video, and any future videos, were necessary for the protection of Plaintiff Martinez." Compl. ¶ 23. Similarly, she alleges that she "reasonably relied, to her detriment" on Meta "to provide assistance to [her] by removing the video of her daughter's death" and therefore "forbore" from any efforts to remove the video, without alleging what those efforts would have been. Compl. ¶ 9. Plaintiff seeks $40,000 in economic damages and $3,000,000 in non-economic damages. Compl. ¶ 30.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(2), a complaint is subject to dismissal if the forum court has no personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "[T]he plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements." *Walker v. THI of N.M. at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1139 (D.N.M. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citation omitted). Dismissal is appropriate if the "plaintiff either has failed to assert a cognizable legal theory as a matter of law or has failed to sufficiently allege plausible facts in support of the complaint." *Aubert v. Central New Mexico Cmty. Coll.*, No. 18-cv-0118, 2019 WL 1239435, at *3 (D.N.M. Mar. 18, 2019). The court must accept "well-pleaded factual allegations" as true but need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678-79 (citation omitted); *see also Aubert*, 2019 WL 1239435, at *4 ("the plaintiff must allege sufficient facts that rise above speculation or mere conclusions, as [t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Iqbal*)). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[g]enerally, the sufficiency of a complaint must rest on its contents alone." *Hernandez v. Grisham*, 508 F. Supp. 3d 893, 948 (D.N.M. 2020), *aff'd in part, appeal dismissed in part*, No. 20-2176, 2022 WL 16941735 (10th Cir. Nov. 15, 2022) (citation omitted). However, the court may consider documents the complaint incorporates by reference; documents attached to or referenced in the complaint if they are central to the plaintiff's claim and authenticity is not disputed; and matters of which the court may take judicial notice. *See id.* (citations omitted); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

## ARGUMENT

### I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

As a threshold matter, Plaintiff fails to meet her burden to allege facts establishing either general or specific personal jurisdiction over Meta in this forum. The Complaint is therefore subject to dismissal under Federal Rule of Civil Procedure 12(b)(2).

A.      **Meta Is Not Subject to General Personal Jurisdiction in New Mexico.**

Meta[3] is not subject to general jurisdiction in New Mexico because, as the Complaint correctly admits, Meta is a Delaware corporation with its principal place of business in "a state other than New Mexico." *See* Compl. ¶ 2.  General jurisdiction – which allows a court to exercise jurisdiction over any claim, regardless of where the claim arose – exists over a corporation when "the corporation's affiliations with the state . . . are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation is generally considered "at home" only in the states where it is incorporated and where it maintains a principal place of business. *Daimler*, 571 U.S. at 137 (citing *Goodyear*, 564 U.S. at 924). Accordingly, post-*Daimler*, courts have typically held that general jurisdiction will not lie against a corporation outside of its state of incorporation and principal place of business. *See, e.g., Moreno v. Devon Energy Corp.*, No. 1:22-cv-345, 2022 WL 3444950, at *2 (D.N.M. Aug. 17, 2022) (finding no general jurisdiction even when nonresident corporate defendant did "substantial business" in New Mexico).

Nor does the Complaint allege any facts that would make this an "exceptional case" where Meta's "operations in [New Mexico] may be so substantial and of such a nature as to render [Meta] at home in [New Mexico]." *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 414 (2017) (citation omitted). The "exceptional case" standard is not met when a company merely "does business within" New Mexico, as Plaintiff alleges in conclusory fashion. Compl. ¶ 3; *see Moreno*, 2022 WL 3444950, at *2. The mere fact that a website is accessible in a jurisdiction is insufficient because this would

---

[3] Hereinafter, references to "Facebook, Inc." will be changed to "Meta" for consistency.

effectively give rise to nationwide general jurisdiction for any company that has an online presence. *See, e.g.*, *MVT Servs., LLC v. Terminal Exch. Servs., Inc.*, No. 2:20-cv-141, 2020 WL 6384293, at *5 (D.N.M. May 5, 2020) ("[T]he fact that Defendant maintains a website which can be accessed in New Mexico does not convey general jurisdiction.").[4] Plaintiff fails to establish general personal jurisdiction over Meta in New Mexico.

### B.  Meta Is Not Subject to Specific Personal Jurisdiction in New Mexico.

There is no specific jurisdiction over Meta in this forum, either, because Plaintiff fails to allege that her claim arises from any Meta conduct or activities purposefully directed to the state of New Mexico. To exercise specific personal jurisdiction over a nonresident defendant, a plaintiff must demonstrate that jurisdiction is consistent with New Mexico's long-arm statute and the requirements of due process. *Diener v. Trapeze Asset Mgmt., Inc.*, No. 15-cv-566, 2015 WL 8332933, at *8 (D.N.M. Nov. 30, 2015) (citations omitted).  Because New Mexico's long-arm statute is coextensive with the requirements of due process, the "analysis collapses into a single search for the outer limits of what due process permits." *Id*. at *13 (quoting *Fed. Deposit Ins. Corp. v. Hiatt*, 1994–NMSC–044, ¶ 7, 872 P.2d 879, 881).  Thus, Plaintiff must show that the defendant has sufficient suit-related contacts with the forum state. *Benton v. Cameco Corp*., 375 F.3d 1070, 1076 (10th Cir. 2004).  "[I]n the internet context," the Tenth Circuit's analysis focuses

---

[4] *See also Romero v. Meta Platforms, Inc.*, No. 7:23-cv-3306, 2024 WL 1554826, at *5-6 (D.S.C. Mar. 14, 2024) (listing cases and finding no general jurisdiction over Meta even assuming Meta has "millions of daily contacts in South Carolina through [its] social media platforms"); *Report & Recommendation ("R&R") adopted*, 2024 WL 3466403 at *5 (D.S.C. July 19, 2024) (finding no error regarding personal jurisdiction under a de novo standard); *Harrison v. Facebook, Inc.*, No. 18-cv-0147, 2019 WL 1090779, at *3 (S.D. Ala. Jan. 17, 2019) (finding no general jurisdiction over Meta); *R&R adopted*, 2019 WL 1102210 (S.D. Ala. Mar. 8, 2019); *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1243-44 (W.D. Wash. 2016) (same).

on whether the internet user or site "*intentionally direct[ed]* his/her/its activity or operation *at the* forum state rather than just having the activity or operation accessible there." *Diener*, 2015 WL 8332933, at *14 (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2015)) (emphasis in original).

 The Complaint does not allege that Meta engaged in any claim-related activity in New Mexico that would establish the existence of specific personal jurisdiction. Plaintiff's claim arises from the allegation that Meta purportedly failed to immediately remove Alirez's Livestream from Facebook. Compl. ¶ 8. While Alirez may have been located in New Mexico at the time of the Livestream, the relevant jurisdictional analysis looks to *the defendant's* alleged conduct, and there is no allegation in the Complaint that *Meta's* alleged act or omission took place in New Mexico. *See Benton*, 375 F.3d at 1076 (personal jurisdiction requires allegations that "actions by the defendant *himself* . . . create a substantial connection with the forum state" (citation omitted and emphasis in original)). Similarly, to the extent Plaintiff's claim is based on certain alleged public statements by Meta's CEO in 2017, Plaintiff fails to allege facts establishing any connection between those statements and New Mexico, either. For example, Plaintiff alleges that Meta's CEO made certain statements at a 2017 conference that took place in San Jose, California; those alleged statements did not reference New Mexico or any other particular state. *See* Compl. Ex. 5 at 2.

 Plaintiff's bare assertions that "Meta does business within the State of New Mexico" and "a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in" New Mexico are conclusory in nature and plainly insufficient. Compl. ¶¶ 3, 5. The fact that a website like Meta's Facebook service is accessible to users in New Mexico is insufficient to establish specific jurisdiction. *See Diener*, 2015 WL 8332933, at *14 ("The maintenance of a web

site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents in the forum state." (quoting *Shrader*, 633 F.3d at 1241)).  Indeed, courts around the country routinely hold that mere access to Meta's Facebook service does not warrant the exercise of specific jurisdiction.  *See, e.g.*, *Romero*, 2024 WL 1554826, at *4 ("Other courts addressing similar situations have also concluded that [specific] personal jurisdiction over Meta was lacking notwithstanding the fact that Facebook was available to and used by residents of those states and allegedly caused harm in those states." (collecting cases)); *Gullen v. Facebook.com, Inc.*, No. 15-cv-7681, 2016 WL 245910, at *2-3 (N.D. Ill. Jan. 21, 2016) (finding no specific personal jurisdiction over Meta merely based on the availability of its Facebook service in the forum state).

And to the extent Plaintiff's claim for promissory estoppel can be construed as one in contract for the purposes of personal jurisdiction, the Complaint does not allege any facts that could establish the kind of transaction with a "substantial connection with New Mexico" required to exercise specific jurisdiction here.  *Diener*, 2015 WL 8332933, at *18 (D.N.M. Nov. 30, 2015) (citing *Benton*, 375 F.3d at 1076 and rejecting bid for specific jurisdiction grounded in breach of contract claim). For example, Plaintiff does not allege that Meta purposefully transacted with her, much less that her claim arises from any such transaction. *See id.*; *see also Ralls*, 221 F. Supp. 3d at 1244 (granting Meta's motion to dismiss breach of contract (and other) claims for lack of personal jurisdiction because plaintiff did not allege that defendant purposefully directed its activities towards Washington).  The Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction.

II.    **THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Even if the Court were to find personal jurisdiction exists here, Plaintiff's Complaint is independently subject to dismissal because she fails to state a cognizable claim for promissory estoppel. *See* Fed. R. Civ. P. 12(b)(6). Under the theory of promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 17, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996) (quoting Restatement (Second) of Contracts § 90(1) (1981)). To establish a claim for promissory estoppel, Plaintiff must plead the following five elements:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Id*. at 828 (citations omitted).

"Promissory estoppel is a narrow doctrine," *Davidson Oil Co. v. City of Albuquerque*, 545 F. Supp. 3d 1039, 1050 (D.N.M. 2021) (quoting *Herrick v. Grindr*, LLC, 306 F. Supp. 3d 579, 598 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019)), and is "used by courts to justify relief when no formal contract was concluded," *id.* (quotation marks omitted and listing cases). Where case law is limited, New Mexico courts will "look for guidance in analogous law in other states or the federal system." *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 38, 453 P.3d 434, 444 (2019).

As explained below, Plaintiff's Complaint fails on all elements of the claim.

### A.  No Actual Promise Was Made to Plaintiff.

Plaintiff fails to allege that Meta ever made her an actual promise.  A "promise must be clear and unambiguous and sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *In re Borges*, 485 B.R. 743, 782 n.53 (Bankr. D.N.M. 2012), *aff'd*, 510 B.R. 306 (B.A.P. 10th Cir. 2014) (quoting 28 Am. Jur. 2d Estoppel and Waiver § 52).  "[I]ndefinite statements . . . cannot serve as the basis for an 'actual promise' under the theory of promissory estoppel." *Id*. at 782 (citation omitted).  And "[i]f there is no promise, . . . the doctrine [of promissory estoppel] is inapplicable." *Ormrod v. Hubbard Broad., Inc*., 328 F. Supp. 3d 1215, 1232 (D.N.M. 2018).

Here, Plaintiff fails to demonstrate that Meta made a "clear," "unambiguous," and "sufficiently specific" promise to her that is enforceable on its terms, for several reasons. ***First***, the Complaint alleges that Meta "made a promise . . . to remove the video of her daughter's death," "voluntarily promised to remove any violent video exhibiting any human killing . . . from its website," and "promised for nearly a decade to end violence, murders, and killings on Meta Platforms." Compl. ¶¶ 8, 11, 14. However, the actual quoted statements that Plaintiff points to – as distinct from Plaintiff's paraphrasing or characterization of the alleged promises – are not so specific or definitive. They are, instead, facially inactionable. Plaintiff points to news articles reporting on a developer conference Meta's CEO attended several years before the events at issue, where he is reported to have said, "[Meta] will do everything to prevent these posts on Facebook, we will make it impossible" and "Facebook will consider monitoring violent images and also offensive material shared on Facebook." Compl. ¶¶ 19-20; Ex. 4 at 4. At the outset, Plaintiff does

not allege that she attended this conference and so, to the extent the statements could be construed as a promise to those who were in attendance (they cannot be, as shown below), they could not form the basis for *Plaintiff's* promissory estoppel claim. In any event, Plaintiff cannot allege that these aspirational, open-ended statements were sufficiently specific or certain such that they could be enforced, whether as to timing, metrics, or outcome. *Cf. Salazar v. Quikrete Companies, LLC*, No. 1:18-cv-00765, 2019 WL 4860915, at *3 (D.N.M. Oct. 2, 2019), *aff'd sub nom. Salazar v. Quikrete Companies, LLC*, 817 F. App'x 565 (10th Cir. 2020) ("Promises are illusory when they fail to establish price, quantity, or other material terms. . . . Thus, statements like 'see you next year' and 'for as long as [you] want it' lack the certainty needed to form legally binding duties." (citation and emphasis omitted)); *see also Doe v. Princeton Univ.*, 790 F. App'x 379, 386 (3d Cir. 2019) (finding that Princeton's policy that it "would not tolerate . . . sexual assault" to be "aspirational" and therefore not actionable under theory of promissory estoppel); *In re McClure*, 625 B.R. 733, 742-43 (Bankr. C.D. Ill. 2021) ("The essence of promissory estoppel is that the plaintiff has reasonably relied on the defendant's promise as one intended as a legally enforceable commitment, 'and not a mere prediction or aspiration or bit of puffery.'" (quoting *Garwood Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698, 705 (7th Cir. 2004)).

    **Second**, the context of the alleged statements confirms that Meta did not make an actual promise to immediately remove each and every instance of livestreamed violence. Specifically, Meta's CEO is reported to have said, in or around the same timeframe, that it is impossible for the Company to "look at everything" given the staggering volume of content posted on its services, and that there are instances where the decision may be to leave certain content up – for example, to aid law enforcement's investigation. *See* Compl., Ex. 7 at 3, 4.

***Third,*** Plaintiff cannot allege that these sentences are actual promises because, according to Plaintiff, they were directed to "the world," Compl. ¶ 8, and public-facing statements to the public at large do not qualify as enforceable promises to an individual sufficient to state a promissory estoppel claim. *See Sabby Volatility Warrant Master Fund Ltd. v. Jupiter Wellness, Inc.*, No. 23-cv-7874, 2024 WL 4265949, at *9 (S.D.N.Y. Sept. 23, 2024) (holding that statements "directed at the general public" do not constitute enforceable promise "to Plaintiff personally" under theory of promissory estoppel (emphasis omitted)).

***Fourth***, courts have regularly held that statements regarding an interactive computer service provider's "general monitoring policy" regarding permissible user content on their services are insufficient to state a claim under a theory of promissory estoppel. *Cf. Lloyd v. Facebook, Inc.*, No. 21-cv-10075, 2022 WL 4913347, at *9 (N.D. Cal. Oct. 3, 2022) (holding that "merely stating that Facebook does not allow users to post harmful content and that they will remove them is a mere 'general monitoring policy'" that is "insufficient" to support a contract claim (citations omitted)); *see also Lloyd v. Facebook, Inc.*, No. 21-cv-10075, 2024 WL 5121035, at *5 (N.D. Cal. Dec. 16, 2024) (ultimately dismissing claim for breach of contract with prejudice).

Plaintiff's promissory estoppel claim thus fails because she fails to allege that Meta made an actual promise to her.

### B.  Plaintiff's Alleged Reliance Was Not Reasonable.

Plaintiff also fails to allege that she reasonably relied on the alleged promises. Her allegations of reliance are wholly conclusory, Compl. ¶¶ 9, 27, and, accordingly, carry no weight on a motion to dismiss.  *See Aubert*, 2019 WL 1239435, at *4.  Notably, Plaintiff fails to allege that she was even aware of Meta's alleged statements before November 8, 2020, when the

Livestream occurred.  Regardless, Plaintiff cannot claim reasonable reliance for the same reasons she fails to allege an actual promise was made by Meta – because statements like "we will consider monitoring violent" content, "we'll never be able to look at everything," Compl. Ex. 4 at 4, Ex. 7 at 3, and even "we will make it impossible," Compl. ¶ 19, are too "equivocal and ambiguous."[5] *See Magnolia Mountain Ltd., P'ship v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 27, 139 N.M. 288, 296, 131 P.3d 675, 683 ("[A]ny reliance by Defendant on the alleged promise would likely have been unreasonable due to the equivocal and ambiguous nature of most of the statements on which Defendant relies."); *see also Herrick*, 306 F. Supp. 3d at 598 ("Herrick's reliance on Grindr's statements was also unreasonable in light of the clear disclaimer in the Terms of Service of any obligation to police user content."); *Murphy v. Twitter*, Inc., 60 Cal. App. 5th 12, 39, 274 Cal. Rptr. 3d 360, 381 (2021) (finding reliance unreasonable when statements were "vague" and "ambigu[ous]"). And, beyond the conclusory allegation that Meta "made a promise to Plaintiff Martinez," Compl. ¶ 8, Plaintiff provides no indication that any promise was made specifically to her. *Murphy*, 60 Cal. App. 5th at 39 (finding that plaintiff "cannot plead reasonable reliance on the alleged promises as a matter of law" because she did not allege "Twitter ever made a specific representation directly to her").

The promissory estoppel claim thus fails for reasonable reliance.

### C.  Plaintiff Did Not Change Her Position.

Furthermore, Plaintiff fails to allege facts that show she changed her position in reliance on the alleged promise. To satisfy this element, Plaintiff would have had to allege facts establishing

---

[5] To be clear, the Livestream is abhorrent and violates Facebook Terms of Service; the Complaint even alleges that it was removed midstream. *See* Compl. ¶¶ 6-7.

what actions she took or refrained from as a result of the alleged promise that placed her in a substantially different (and detrimental) position. In *McLaughlin v. Santa Fe Cmty. Coll.*, No. A-1-CA-39156, 2023 WL 7018418, at *5 (N.M. Ct. App. Oct. 25, 2023), for example, the court found this element satisfied where plaintiff "decided to retire early and forgo the last three years of her multi-year employment contract" in reliance on alleged promise. *See also Strata Prod. Co.*, 121 N.M. at 629 (finding plaintiff "substantially and foreseeably altered its position" by drilling a "high-risk" test well). Here, the Complaint alleges in conclusory fashion only that Plaintiff "forbore further efforts to remove the video." Compl. ¶ 9. It alleges no facts, however, regarding what steps Plaintiff would have taken to remove the Livestream but for her reasonable reliance on Meta's alleged promise. Plaintiff's allegation is insufficient to show how she changed her position, let alone *substantially* changed her position. *Cf. McLaughlin*, 2023 WL 7018418 at *5; *Strata Prod. Co.*, 121 N.M. at 629.  Plaintiff fails to satisfy this third element of promissory estoppel.

### D.  Plaintiff's Alleged Forbearance Was Not Reasonably Foreseeable.

For the same reason, Plaintiff also fails to allege that her alleged forbearance was somehow reasonably foreseeable to Meta. The Complaint contains no more than a conclusory allegation reciting the legal element of the claim, without any supporting allegations of fact. *See* Compl.  ¶ 8 ("Meta . . . reasonably should have expected Plaintiff Martinez to act on the promise.").  This does not suffice.  *See Aubert*, 2019 WL 1239435, at *4 ("[T]he plaintiff must allege sufficient facts that rise above speculation or mere conclusions, as [t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Iqbal*)). Indeed, the Complaint's exhibits indicate that a key component of Meta's content moderation processes are the reports that users submit regarding potentially violative content for Meta's content moderation

15

teams to review.  *See, e.g.*, Compl., Ex. 7 at 3. Thus, according to Plaintiff's own exhibits, Meta reasonably foresees users reporting content, not forbearing from doing so.  Plaintiff fails to plead the fourth element of promissory estoppel.

Plaintiff therefore fails to state a claim for promissory estoppel, and her Complaint must be dismissed.

## III.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS PLAINTIFF'S CLAIMS.

The Complaint independently fails because it is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see also Getachew v. Google, Inc.*, 491 F. App'x 923, 925 (10th Cir. 2012). The statute states "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Because the statute "protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles,'" Section 230 immunity should be resolved "at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consuemraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citation omitted).

Contrary to Plaintiff's allegations, Compl. ¶ 15, Section 230 applies to immunize an online service provider even where, as here, the content at issue that was posted by the user on the service is objectionable, unlawful, and/or violent. *See, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) (affirming dismissal of claims alleging that publication of Hamas content inspired terrorist attacks); *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021) (affirming dismissal of claims brought by victims of Paris terrorist attacks), *vacated and remanded on other grounds*, 598 U.S.

617, 143 S. Ct. 1191 (May 18, 2023); *M.P. v. Meta Platforms, Inc.*, 692 F.Supp.3d 534 (D.S.C. 2023) (dismissing claims alleging Meta was liable for Emanuel AME Church shooting).

Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a "provider . . . of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claim treats the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1). Plaintiff's claims meet all three conditions and accordingly should be dismissed.

### A. Meta Is an Interactive Computer Service Provider.

The first Section 230 condition is readily met. An interactive computer service provider is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Meta qualifies as an interactive computer service provider because Plaintiff alleges that Facebook is a "social media service" or "website" provided by Meta where users can post content viewable by others over the Internet. *See* Compl. ¶¶ 6, 7, 13. This Court and others have uniformly so held. *See Sekiya v. Facebook*, No. 16-cv-1368, 2017 WL 3588816, at *2 (D.N.M. Jan. 3, 2017) (dismissing complaint against Meta under Section 230); *see also Sikhs for Justice, Inc. v. Facebook*, 697 F. App'x 526, 526 (9th Cir. 2017) ("[Meta] is an interactive computer service provider."); *Dangaard v. Instagram, LLC*, No. 22-cv-01101, 2022 WL 17342198, at *4 (N.D. Cal. Nov. 30, 2022) ("Meta defendants certainly provide interactive computer services because they provide or enable computer access by multiple users to a computer server via the Facebook and Instagram social media platforms." (quotation marks and alterations omitted)); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 & n.10 (E.D.N.Y. 2017). Thus, the first Section 230 requirement is satisfied.

**B.  The Content at Issue Was Provided by Someone Other than Meta.**

The second Section 230 condition is also met because Plaintiff alleges the content at issue—the Livestream—was provided by Alirez, not Meta. *See* Compl. ¶ 6; *see also Silver v. Quora, Inc.*, 666 F. App'x 727, 729 (10th Cir. 2016) (Section 230 immunity applies where "another information content provider provided the information at issue" (cleaned up, citation omitted)). Plaintiff does not allege that Meta created any of the content. *See generally,* Compl.; *see also Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1306 (N.D. Cal. 2019) (requirement met where "the complaint nowhere alleges that Facebook provided, created, or developed any portion" of the content at issue). Thus, because the content at issue here was provided by an information content provider other than Meta, the second Section 230 requirement is satisfied. *See Sekiya*, 2017 WL 3588816, at *2 (finding Section 230 immunity applied to videos provided by third parties).

**C.  The Complaint Seeks to Hold Meta Liable for Its Purported Exercise of a Publisher's Traditional Editorial Functions.**

Finally, the third condition is met because Plaintiff seeks to hold Meta liable for publishing, and not removing promptly enough, the Livestream from Facebook. Under Section 230, a claim treats a defendant as a "publisher" if it seeks to hold the defendant liable for its purported exercise of "'traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content.'" *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)); *see also Silver v. Quora, Inc.*, No. 15-cv-830, 2016 WL 9777159, at *3 (D.N.M. June 13, 2016), *aff'd*, 666 F. App'x 727 (10th Cir. 2016) (Section 230 applied where plaintiff sought to treat defendant as publisher of offending statements). "[A]ny activity that can be boiled down to deciding whether to exclude material that

18

third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008). "[A] publisher [] decides whether to publish 'material submitted for publication.'" *Sikhs for Justice, Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd*, 697 Fed. Appx. 526 (9th Cir. 2017) (citation omitted). "It is immaterial whether this decision comes in the form of deciding what to publish in the first place or what to remove among the published materials" *Id.* (cleaned up, citation omitted). What matters here is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker'" of content provided by another. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016), *aff'd,* 700 F. App'x 588 (9th Cir. 2017) (citation omitted). If it does, Section 230(c)(1) precludes liability. *Id.*

Here, Plaintiff's claims arise out of Meta's alleged failure to remove the Livestream before the 50:52-minute mark. Compl. ¶ 7. Courts have consistently dismissed claims, like Plaintiff's, that are premised on allegations that a defendant failed to remove offensive user-generated content. *See, e.g.*, *Sekiya*, 2017 WL 3588816, at *2; *Herrick*, 765 F. App'x at 591 (dismissing plaintiff's claims pursuant to Section 230 because they sought to hold Grindr liable for an "alleged failure to edit, monitor, or remove the offensive content" that caused him to suffer injuries at the hands of a stalker); *Force*, 934 F.3d at 65 (dismissing claims that "[Meta] alleged[ly] fail[ed] to delete content from Hamas members' Facebook pages").

Thus, Section 230's third and final requirement is satisfied. Because all three Section 230 requirements have been met, Plaintiff's promissory estoppel claim is barred.

IV.    **PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND.**

If the Court reaches the issue of whether Plaintiff has failed to state a claim, it should dismiss Plaintiff's claims with prejudice. Leave to amend is inappropriate where amendment "would be futile." *Weinstein v. U.S. Air Force*, 468 F. Supp. 2d 1366, 1374 (D.N.M. 2006). Amendment would be futile where the amended complaint would not survive a motion to dismiss. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004); *Weinstein*, 468 F. Supp. 2d at 1374. That is the case here. ***First***, Plaintiff failed to allege sufficient facts to support its claim against Meta and no additional facts pleaded can cure the deficiencies. *See supra* Section II. ***Second***, Plaintiff's claim is barred by Section 230 no matter what additional facts she pleads. *See supra* Section III. Indeed, courts generally deny leave to amend when Section 230 applies because the statute cannot be "circumvent[ed]" with "creative pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016); *see also King v. Facebook, Inc.,* 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021) (dismissing claims barred by Section 230 with prejudice because "it would be futile for [Plaintiff] to try to amend the claim[s]"); *see also Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607 (S.D.N.Y. Jan. 15, 2020) (finding leave to amend would be futile where Section 230 barred claims). Because amendment here would be futile, if the Court reaches the merits, it should dismiss the Complaint with prejudice. *Bradley*, 379 F.3d at 901; *Weinstein*, 468 F. Supp. 2d at 1374.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Meta respectfully requests that the Court dismiss Plaintiff's Complaint.

DATED this 30th day of December 2024.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/Michelle Visser*             

Michelle Visser (*pro hac vice*)
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
+1 415 773 5700
+1 415 773 5759
mvisser@orrick.com

Caroline Simons (*pro hac vice*)
222 Berkeley Street
Suite 2000
Boston, MA 02116-3740
+1 617 880 1800
+1 617 880 1801
csimons@orrick.com

Paige Pavone
51 West 52nd Street
New York, NY 10019-6142
+1 212 506 5000
+1 212 506 5151
ppavone@orrick.com

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 30, 2024, a copy of the foregoing document was electronically filed through the Court's CM/ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

<u>*/s/ Michelle Visser*</u>
Michelle Visser